# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:08-CV-00114-R

**BARBIE KITTEL**                                                                                      **PLAINTIFF**

v.

**C-PLANT FEDERAL CREDIT UNION, et al.**                                          **DEFENDANTS**

## MEMORANDUM OPINION & ORDER

This matter comes before the Court upon several motions in limine (DN 51, 62, 63, 72, 73) that are now ripe for adjudication.

**1.  Plaintiff's Motion in Limine to Exclude Felicia Shepherd from Testifying as an Expert Witness at Trial (DN 51)**

Plaintiff Barbie Kittel objects to National Credit Union Administration ("NCUA") examiner Felicia Shepherd from testifying as an expert because the NCUA did not grant permission for Shepherd to testify as an expert at her deposition. Defendants reason that Shepherd's testimony consists of facts she found during her examination and knowledge of financial industry standards and practices based on her education, training and experience, akin to the hybrid testimony of a treating physician not testifying as an expert. In a supplement requested by the Court, Kittel identified specific portions of Shepherd's testimony she seeks to have excluded. The Court will address each objection separately:

    a.  *Page 90, Lines 23-24; Page 91, Lines 1-2 and 11-14.*  Denied.  Shepherd is not giving purely opinion evidence although it is close.  She is giving factual statements about a subject in which she has experience.  She simply is testifying to the standard policy.  She does have specialized knowledge, however it is not an opinion about the policy or an interpretation of the policy.  There is no dispute about the policy in this case.  The dispute is whether that policy

is a reason for Kittel's termination. There is no surprise to Kittel that this is a standard policy.

   b. *Page 91, Lines 23-25; Page 92, Lines 1-3, 7-9 and 13*. Granted. In this instance Shepherd has given an opinion regarding how employees should respond to the policy.

   c. *Page 97, Lines 24-25; Page 98, Line 21*. Granted. This is opinion evidence. In addition, there is no basis for Shepherd's expertise in severance packages.

   d. *Page 104, Line 25; Page 105, Lines 1-25; Page 106, Lines 1-2 and 23-25; Page 107, Lines 1-2*. Granted. This is expert opinion evidence. Shepard can not testify as an expert. She was never listed as an expert. The Court further finds that reference to the unrelated claims of Mr. Hack, a plaintiff in another case, would be confusing and possibly misleading to the jury.

  **2. Plaintiff's Motion in Limine to Exclude Comment about Subsequent NCUA Examinations or Improvement in C-Plant's Camel Rating (DN 62)**

Kittel objects to any evidence or testimony regarding NCUA examinations after she was terminated, especially evidence that C-Plant's "CAMEL rating" improved after those examinations. The CAMEL rating is a credit rating determined by the NCUA. Shepherd testified that C-Plant's rating was lowered from a three to a four in March 2008. After subsequent examinations, the rating was upgraded back to a three. C-Plant argues that this evidence is relevant to C-Plant's legitimate justification for Kittel's termination because it was due in part to pressure from the NCUA. Whether NCUA examiners suggested the termination of Kittel and other employees is disputed. C-Plant contends that the jury should be able to consider NCUA's response to the employee terminations.

The Court finds that whatever the probative value of evidence of subsequent NCUA examinations and the fact that C-Plant's CAMEL score improved after Kittel was terminated is,

it is substantially outweighed by the danger of confusion of the issues. Fed. R. Evid. 403. C-Plant's improved CAMEL rating could have been caused by a multitude of factors. To show that Kittel's termination directly impacted the improved score would require additional factual evidence, and possibly expert evidence as well. C-Plant does not need to show that its score actually improved after terminating Kittel to prove that the termination was motivated by the poor NCUA examination in March 2008 and alleged pressure by the NCUA when it terminated her.

Should C-Plant believe that evidence in the trial changes the balance between probative value and danger of confusion, C-Plant must approach the bench before introducing the evidence.

   3.   **Plaintiff's Motion in Limine to Exclude Any Opinion that Rolling Due Dates Materially Affected the Financial Condition of Defendant, C-Plant (DN 63)**

Kittel argues that evidence of how rolling due dates materially affected the financial position of C-Plant is not relevant. The Court agrees. What is relevant is C-Plant's motivation for terminating Kittel. C-Plant may introduce evidence to explain why the practice of rolling due dates is disfavored and why they were concerned that Kittel rolled due dates. For example, Shepherd may testify that this practice misstates the financial reports of the credit union and how that could affect the financial statements of an institution. Testimony regarding whether rolling due dates actually impacted C-Plant is not relevant, and would be confusing and misleading to the jury.

   4.   **Defendants' Motion in Limine Regarding Plaintiff's Alleged Emotional Distress (DN 72)**

The Federal Credit Union Act ("FCUA") permits a court to order a credit union "to pay

3

compensatory damages." 12 U.S.C. § 1790b(c)(2). The only case addressing this issue held that emotional damages are recoverable under the FCUA. *Simas v. First Citizens' Federal Credit Union*, 170 F.3d 37, 47 (1st Cir. 1999). C-Plant does not contend that such damages are not recoverable under the FCUA.

To be eligible for compensatory damages, Kittel must prove that C-Plant's unlawful actions caused her emotional distress. *Carey v. Piphus*, 435 U.S. 247, 263-64 (1978). Her own testimony, along with the circumstances of the case, may satisfy this burden without additional medical support. *Turic v. Holland Hospitality, Inc.*, 85 F.3d 1211, 1215 (6th Cir. 1996) (citations omitted). But she must show that her distress flowed from the alleged discriminatory termination, and not another event. *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 472 (6th Cir. 2009). Defendants object to any comment or testimony concerning Kittel's emotional distress because she has not presented evidence of a specific compensable injury.

Here, Kittel has testified regarding her fear of unemployment, her distress due to being fired from a job she loved when she was following C-Plant's guidelines, and her feelings of despair after receiving an eviction notice. The Court finds that this testimony is specific evidence of emotional distress flowing directly from the alleged unlawful termination. Therefore, this evidence may be presented to the jury to determine whether emotional distress damages are justified. Kittel also testified regarding C-Plant's actions after the termination, including how it denied her vacation pay, withheld her 401k paperwork and contested her unemployment compensation. These actions are not the basis of her retaliation claim and are not evidence of emotional distress flowing from the alleged unlawful termination. Thus, they may not be introduced at trial.

Finally, Kittel testified that she went to a doctor who prescribed her antidepressants. Kittel may testify that she went to a doctor for her symptoms. She may not testify that the doctor prescribed medication or his diagnosis. Without testimony from her doctor as to the causation, the jury cannot know why the doctor prescribed the antidepressants. If Defendants open the door to this subject, counsel for Plaintiff may approach the Court.

**5.     Defendants' Motion in Limine Regarding Punitive Damages (DN 73)**

With respect to the remedies available to an employee suing pursuant to the retaliation provision of the FCUA, a court may order a credit union: "(1) to reinstate the employee to his former position, (2) to pay compensatory damages, or (3) *take other appropriate actions to remedy any past discrimination*." 12 U.S.C. § 1790b(c) (emphasis added). The Court holds that punitive damages are not allowed under the plain language of this statute.

Only two courts have previously addressed this issue. In *McNett v. Hardin Community Federal Credit Union*, the court relied on the general rule "'that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute.'" No. 3:02-cv-7576, 2006 WL 2473000, at *2 (N.D. Ohio Aug. 24, 2006) (quoting *Franklin v. Gwinnett County Public Sch.*, 503 U.S. 60, 70-71 (1992)). The court reasoned that because the FCUA did not expressly exclude punitive damages the court "may grant appropriate relief in an action brought pursuant to the FCUA, including punitive damages." *Id.* In *Averett v. Chicago Patrolmen's Federal Credit Union*, the court relied on the opinion in *McNett* and agreed that punitive damages were available under § 1790b. No. 06-cv-4606, 2007 WL 952034, at *3 (N.D. Ill. March 27, 2007). These unpublished opinions are not binding on this Court.

5

The legislative history of the statute does not provide much additional guidance. One primary purpose of the legislation was to "enhance the regulatory enforcement powers of the depository institution regulatory agencies to protect against fraud, waste and insider abuse." H.R. Rep. No. 101-54(I), at 307-8 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 103-04. But when discussing the section that created a new cause of action for employees who were fired for whistleblowing, Congress only said the section "empowers a district court to order reinstatement, compensatory damages, or other appropriate remedies, if the employee was wrongfully discharged." *Id.* at 397. There is no explanation of what Congress had in mind with regards to "other appropriate remedies."

The language included in the statute, however, is "take other appropriate actions" not "order other appropriate remedies." *Compare with Reich v. Cambridgeport Air Sys., Inc.*, 26 F.3d 1187, 1190-91 (1st Cir. 1994) (finding exemplary damages available under statute that allowed court to "order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay," comparing language of statute with language of Court's opinion in *Franklin*). This distinction is important. While "all appropriate relief" implies broad discretion to craft appropriate remedies, "take other appropriate action" does not imply the discretion to award punitive damages. "Take action" indicates the power to order injunctive relief. "Take action" and "award relief" or "order remedies" are distinct statutory directions.

In *Franklin*, the Court determined that compensatory damages were available under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, a statute for which no private cause of action was expressly provided. 503 U.S. 60. The Court never mentioned punitive damages; in fact, the Court consistently spoke "in a compensatory vein." *Moreno v.*

6

*Consolidated Rail Corp.*, 99 F.3d 782, 789 n.3 (6th Cir. 1996). The Sixth Circuit has previously questioned the relevance of *Franklin* to the determination of whether punitive damages are available under a statute. *Id.*

Here, unlike *Franklin*, Congress did expressly provide for three particular remedies. "'[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.'" *Moreno*, 99 F.3d at 792 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979)). The Court finds that the plain language of § 1790b(c)(3) indicates a congressional intent to limit the general presumption in favor of any and all appropriate damage remedies. By using the "take action" language instead of "award relief" language, the statute is different from others in which courts have implied the power to grant punitive damages.

Because the Court holds that punitive damages are not available under the FCUA, and because Kittel's intentional tort claims have been dismissed, no comment or testimony regarding punitive damages may be offered at trial.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Plaintiff's Motion in Limine to Exclude Felicia Shepherd from Testifying as an Expert Witness at Trial (DN 51) is DENIED IN PART and GRANTED IN PART;

(2) Plaintiff's Motion in Limine to Exclude Comment about Subsequent NCUA Examinations or Improvement in C-Plant's Camel Rating (DN 62) is GRANTED;

(3) Plaintiff's Motion in Limine to Exclude Any Opinion that Rolling Due Dates Materially Affected the Financial Condition of Defendant, C-Plant (DN 63) is GRANTED;

(4) Defendants' Motion in Limine Regarding Plaintiff's Alleged Emotional Distress (DN 72) is DENIED IN PART and GRANTED IN PART; and

(5) Defendants' Motion in Limine Regarding Punitive Damages (DN 73) is GRANTED.